NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| LEONARD PETER ROLLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 06-61-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| D. L. STINE, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Plaintiff Leonard Peter Rollock, a/k/a Petey, a/k/a Peter Ifill, a/k/a Peter Rollack, a/k/a Leroy Adam Watson, and a/k/a Steven Peter Rollack[1] (hereafter, "Rollock" or "Leonard Rollock"), an individual confined in the United States Penitentiary ("USP")-McCreary in Pine Knot, Kentucky, has filed a *pro se* complaint and motion to proceed *in forma pauperis*. His motion will be granted by separate Order. The complaint is now before the Court for initial screening. 28 U.S.C. §1915(e); *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). For the reasons to be discussed below, this action will be dismissed, without prejudice.

<u>JURISDICTION AND CLAIMS</u>

Claiming that this Court has jurisdiction pursuant to 5 U.S.C. §702, Plaintiff Rollock asserts that the Bureau of Prisons ("BOP") has improperly barred all correspondence between him and his son. He asserts that this bar: (1) is impermissibly based on an Assistant United

---

[1] *See United States v. Reiter*, 897 F.2d 639 (2nd Cir. 1990); *United States v. Rollack*, 956 F.2d 1159 (2nd Cir. 1992) (affirming conviction and sentence on re-trial).

States Attorney's request of 6 years ago; (2) contravenes BOP policy; and (3) violates his rights under the U.S. Constitution, specifically the First, Fifth (both due process and equal protection components), and Eighth Amendments.

## FACTUAL ALLEGATIONS

The Plaintiff, who describes himself as a "certified paralegal," has completed a standard complaint form used by prisoners in filing civil rights actions. In addition, he has submitted a self-styled typewritten complaint and numerous attachments as exhibits. As Defendants, he names USP- McCreary's Warden D. L. Stine; the BOP itself; and an Assistant United States Attorney for the Southern District of New York, Nicole LaBarbera. The following is a summary or construction of the Plaintiff's factual allegations. [Record No. 1]

The Plaintiff is fifty-four years old and is serving a 50-year sentence which was imposed in 1992, in the United States District Court for the Southern District of New York, after his conviction for being a major drug dealer. The conviction and sentence were affirmed on appeal. *See United States v. Rollock*, 956 F.2d 1159 (2nd Cir. 1992).

Plaintiff Rollock alleges that he has a son, "Peter Leonard Rollock"[2] (hereafter, "Peter Rollock"), born in 1974 to him and his now-estranged wife, Brenda White. In December of 1997, Peter was indicted in the Southern District of New York for racketeering and violent crimes in aid of racketeering, including arranging the murder of a government witness. This activity allegedly occurred from his jail cell in North Carolina. A later opinion of the trial court

---

[2] A/k/a Peter Rollack, a/k/a Pistol Pete, a/k/a Michael Cooper, a/k/a Nathaniel Tucker. *See United States v. Rollack*, 90 F.Supp.2d 263 (S.D.N.Y. 1999).

reveals that the son's jail correspondence was seized at least twice with the affidavits of an ATF[3] special agent, who set out information "supporting his belief that [Peter Rollock] was using the mails to direct illegal activities of members of the gang Sex, Money and Murder ("SMM") and had used the mails to order the murder of David Mullins on November 27, 1997." *See United States v. Rollack*, 90 F.Supp.2d 263, 267 (S.D.N.Y. 1999) (denying motion to suppress the seized mail). The agent also stated his suspicion that the murder had been accomplished by Peter Rollock's instructions in a code used by the SMM to avoid interception. *Id.* at 274.

Plaintiff Rollock alleges that in late 1999, the BOP seized an outgoing piece of his mail and charged him with "unauthorized use of the mail," as his letter was ostensibly addressed to his wife but the contents were directed to his son. The Plaintiff insists that the mail was not criminal in nature and should have been returned to him pursuant to 28 C.F.R. §540.13. However, the return did not occur. In the course of administrative proceedings concerning the mail, the Plaintiff discovered that the BOP had barred correspondence between him and his son at the request of Defendant LaBarbera.

LaBarbera was the Assistant U.S. Attorney prosecuting the son. In February 2000, she wrote that the U.S. Attorney's Office in the S.D.N.Y was concerned that the son may enlist his father to have his father's associates do harm to the witnesses against the son and, therefore, "I would ask that they not be permitted to correspond for at least a couple of years, at which point we could reassess the potential threat." Exhibit [hereafter, "Ex."] H-8 at 13.

---

[3] Bureau of Alcohol Tobacco and Firearms.

While his father was pursuing the matter of the desired father-son correspondence with the BOP, on January 4, 2000, son Peter Rollock entered an *Alford* plea to escape the death penalty. Later that year he was sentenced in conformity with the plea agreement and has been serving his sentence in another BOP facility, "ADX-Florence, commonly referred to as Super-Max." In July of 2004, the BOP transferred Leonard Rollock to USP-McCreary.

Four years had passed since the bar was imposed and the Plaintiff is now at a new institution with a new warden. However, the BOP still refuses to allow correspondence between the two Rollocks. Therefore, in December 2004, the Plaintiff began the BOP administrative process again. Again, he was denied permission to correspond with his son at every level of the administrative process. The attached responses exchanged in Administrative Remedy No. 363346 show that staff at USP-McCreary contacted the Office of U.S. Attorney for the Southern District of New York, and that Office's position on the matter remained unchanged. In addition to acceding to the Assistant U.S. Attorney's position, the BOP justified continuing the ban on correspondence under the BOP's Program Statement (P.S.) 5265.11, *Correspondence*, which purportedly permits great flexibility by wardens.

By June of 2005, the Plaintiff had exhausted the BOP administrative remedy process. On February 10, 2006, he filed this action for relief from the BOP's total ban on correspondence between him and his son. He seeks injunctive relief – both preliminary and permanent – in the form of an order directing the BOP to permit correspondence with his son, and a declaratory judgment which he can use to show BOP personnel so as to keep in contact with his son, regardless of where he is transferred.

DISCUSSION

As an initial matter the Court must address the issue of jurisdiction over the claims asserted in this action. As a general matter, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. In this case, the Plaintiff has asserted that jurisdiction is appropriate under §1331, because he claims violations of the U.S. Constitution. Additionally, he alleges that he is bringing the claims pursuant to another federal statute, 5 U.S.C. §702, the Administrative Procedures Act ("APA"). *See Reiner v. West Village Assocs.*, 768 F.2d 31, 33 (2nd Cir. 1985) (per curiam) (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

The Court concludes that it has jurisdiction over the claims asserted. Notwithstanding the fact that jurisdiction is proper, the Plaintiff has failed to state a claim upon which this Court may grant relief. Consistent with the statutory mandate to provide for the safekeeping of all federal prisoners, 18 U.S.C. §4042, and pursuant to the APA, 5 U.S.C. §702, *et seq.*, the BOP has promulgated a regulation giving each institution's warden broad discretion to reject "correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution to the protection of the public, or if it might facilitate criminal activity," or if it contains material on a separate list of eight prohibited topics, such as escape plans or sexually explicit material. 28 C.F.R. §540.14(d).

The law and the §540 regulations are incorporated into P.S. 5265.11, which another federal court has described as providing "a clear prohibition against written correspondence between inmates." *Seehausen v. VanBuren*, 243 F.Supp.2d 1165, 1169 (D.Or. 2002). This being

the general rule, barring correspondence between the two Rollocks – both violent offenders – is all the more reasonable.

Here, Plaintiff Rollock broadly claims a violation of BOP policy, but he does not make a cognizable claim that there has been a violation of 28 C.F.R. §540.14(d) or P.S. 5265.11.[4] To the contrary, the record shows that 28 C.F.R. §540.14(d) was followed, and the resulting bar to the correspondence desired by this Plaintiff was consistent with the terms of the regulation. Although he claims that the correspondence bar should not be so broad, the Plaintiff points to no illegality in the warden's decision. Likewise, the Plaintiff does not claim that the regulation exceeds BOP's authority to so act under the APA. To the extent that the Court liberally construes the Plaintiff's reference to 5 U.S.C. §702 as a claim that the APA was violated, the Plaintiff has failed to provide any support for this claim, either in presenting relevant facts or citing any supporting law.

The Plaintiff also fails to state how Defendant LeBarbera acted inappropriately in recommending a correspondence bar for these two violent offenders, or how the BOP acted improperly in following that recommendation. It should be remembered, and it evidently was, that Assistant U.S. Attorney LeBarbera was Peter Rollock's prosecutor. It is presumed that she is familiar with the detail concerning how he arranged a murder from behind bars, including the use of his incoming and outgoing mail to facilitate it.

---

[4] Plaintiff Rollock does complain that the BOP violated 28 C.F.R. §540.13, as to returning some rejected mail in 1999, but he failed to pursue the matter administratively. Therefore, to the extent the Plaintiff asserts a violation of this regulation, the issue is unexhausted and is not appropriate for this Court's review.

Moreover, the Plaintiff has utterly failed to state a Constitutional claim. As to the purported First Amendment violation, the Supreme Court has held that a prisoner-plaintiff has no reasonable expectation of privacy in his non-privileged mail and the prison's interest in maintaining security justifies minor burdens placed on a plaintiff's freedom to communicate. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Rollack*, 90 F.Supp.2d at 270. In *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), the Supreme Court upheld the application of prison regulations for the censorship of incoming inmate mail so long as the censorship was reasonably related to legitimate penological interests, *i.e.*, maintaining penal safety and security. The same considerations, and additionally, the safety of the public, support reading or barring the Plaintiff's correspondence with a known murderer-from-afar. Therefore, the instant inmate's purported "correspondence rights protected by the First Amendment" have not been violated because the Defendants' actions are reasonably related to legitimate concerns of the Department of Justice.

Regarding the alleged due process violation, the Plaintiff has also failed to state a claim. While prisoners do retain some rights under the Due Process Clause, these rights are subject to "restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolffe v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent, Mass. Corr. Inst, Walpole v. Hill*, 472 U.S. 445 (1985). Here, the Plaintiff was entitled to the administrative remedy process found at 28 C.F.R. §§542.10-.19 (1998), and he completed this process. *See also Sandin v. Connor*, 515 U.S. 472, 484 (1995) ("To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an 'atypical and significant hardship . . . in

relation to the ordinary incidents of prison life,' or that the government's actions 'will inevitably affect the duration of his sentence.'")  The Plaintiff has pled neither.

Likewise, the Plaintiff does not allege that the BOP's decision to deny the father-son correspondence is arbitrary, in violation of his substantive due process rights.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *see also Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223-26 (1985)).  The Plaintiff's own attachments show that in arriving at the complained-of decision, the proper regulation was followed; denial of the request is consistent with the BOP regulation and policy; and the correspondent desired by the Plaintiff had a conviction strongly militating against permission to correspond.

Further, while the Plaintiff has also alleged a violation of equal protection, again, has not supported this claim.  He has not shown that his correspondence request was denied based upon his race or ethnic group.  And he has not alleged that there are persons who were similarly situated and who were afforded favorable treatment.  *See e.g.*, *Reed v. Reed*, 404 U.S. 71, 76 (1971) (equal protection requires that "all persons similarly circumstanced shall be treated alike").

A litigant "could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently."  *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993).  To state a discrimination claim, a Plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim."  *Id.* (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)).  Inasmuch as the Plaintiff has not made such a showing, no

cognizable equal protection claim has been stated. *Id.* A discrimination claim which is not supported with any facts is dismissible. *Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971).

As to any Eighth Amendment claim, the deprivation of correspondence with one particular person, even one's own son, cannot be said to create inhumane prison conditions or deprive the instant petitioner of basic necessities. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337 (1981); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Osvaldo v. U.S.P Lewisburg Warden*, 2006 WL 485574 (M.D.Pa. 2006) (slip op.).

In addition, the Plaintiff has failed to demonstrate that injunctive relief is appropriate. To be entitled to relief, the Plaintiff must establish, *inter alia*, that he would suffer irreparable harm unless the requested relief is granted. He has not made such a showing here. *See Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing cases). Likewise, he has not shown a substantial likelihood of prevailing on the merits.

Additionally, the federal courts have been properly cautioned to stay out of the business of attempting to micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). This Court is not convinced that the public interest would be served by interference with the decision of a warden not to permit correspondence between two felons, one of whom has already committed murder *via* correspondence from his cell, regardless of their family relationship.

As the administrative responses illustrate, the BOP's decisions on such matters as the correspondence issue in this action is interwoven with larger policy considerations. Plaintiff's warden explained, "as we strive to build cooperative relationships with all law enforcement entities, particularly components of the Department of Justice, we will not support the approval of correspondence privileges." Ex. N-14 at 28. At the national level, the BOP affirmed the warden's handling of the Plaintiff's request and concluded "correspondence privileges with your son cannot be permitted at this time due to security concerns." Ex. O-15 at 29.

Thus, because Plaintiff Rollock has failed to state a claim upon which this Court may grant relief, under either 28 U.S.C. §1331 or 5 U.S.C. §702, his complaint will be summarily dismissed. *See Estrella v. Menifee*, 275 F.Supp.2d 452 (S.D.N.Y. 2003).

## CONCLUSION

The Court being sufficiently advised, it is hereby

**ORDERED** that this action shall be **DISMISSED**, with prejudice. 28 U.S.C. §§1915(e)(2)(B)(ii) and 1915A(b)(1). A separate Judgment shall be issued this date.

This 12th day of April, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge